United States District Court
Southern District of Texas

**ENTERED**

May 04, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-13-364 |
| | § | CIVIL ACTION NO. H-18-1906 |
| LENYN ACOSTA, | § | |
| | § | |
| Defendant-Movant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Lenyn Acosta's  § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.174, 175),[1] and the United States' Answer and Motion to Dismiss Movant's  § 2255 Motion (Document No. 179).  After reviewing Movant's § 2255 Motions, the Government's Answer and Motion to Dismiss, the record of the proceedings before the District Court in the underlying criminal case and on appeal, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Lenyn Acosta's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 174, 175) be DENIED as Time-Barred, and that the United States' Motion to Dismiss (Document No. 179) be GRANTED.

## I.      Procedural History

Movant Lenyn Acosta ("Acosta"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255.  This is Acosta's first

---

[1] Lenyn Acosta's  Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-18-1906 and at Document No.174 and 175  in Criminal Action No. H-13-364. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

attempt at § 2255 relief.  Acosta raises claims of ineffective assistance of counsel, all of which relate to his sentencing, and the length of his sentence.

On June 13, 2013, Acosta, Debora Baldizon, Maurisio Hernandez-Chinchilla, Franklin Gutieres, and Juan Carlos Reyes-Lagos were charged in a twelve-count Indictment.  Acosta was charged with conspiracy to transport and harbor illegal aliens in violation of 8 U.S.C. Section 1324(a)(1)(A)(V)(I), 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i)(Count 1), conspiracy to conceal, harbor and shield from dection an illegal alien within the United States for commercial advantage and private financial gain in violation of Sections 1324(a)(1)(A)(iii), 1324(a)(1)(B)(I), and 1324(a)(1(A)(v)(II)(Count 2), conspiracy to conceal, harbor and shield from detection certain illegal aliens within the United States for commercial advantage and private financial gain in violation of Sections 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), and 1324(a)(1)(A)(v)(II) (Counts 3, 4, 5), conspiracy to transport illegal aliens within the United States in violation of Sections 1324(a)(1)(A)(ii), 1324(a)(1)(B)(i) and 1324(a)(1)(A)(v)(I) (Count 6), transporting a minor illegal alien within the United States for commercial advantage and private financial gain in violation of Sections 1324(a)(1)(A)(ii), 1324(a)(1)(B)(I) and 1324(a)(1)(A)(v)(II) (Count 7), and transporting certain illegal aliens within the United States for commercial advantage and private financial gain in violation of Sections 1324(a)(1)(A)(ii), 1324(a)(1)(B)(i) and 1324(a)(1)(A)(v)(II)(counts 9, 10, 11). (Document No. 1).  Pursuant to a Rule 11(c)(1)(A) and 11(c)(1)(B) written plea agreement, Acosta pleaded guilty to Count 1. (Document No. 58).  Under the terms of the written plea agreement, Acosta waived his right to appeal and collateral review.  (Document No. 58, ¶¶ 8-10).  Additionally, Acosta and his counsel, as part of the written plea agreement, each stated that Acosta had been advised about his rights, and about the applicable sections of the sentencing guidelines, which may

apply.  (Document No. 58, p. 9-10).

At his June 21, 2013, Rearraignment, the Court engaged in an extended colloquy to ensure that Acosta understood the charges against him, the maximum penalties, the rights he was waiving, including the right to appeal, the factual basis of the plea, and the manner in which his sentence would be calculated.  (Document No. 156, Transcript of Rearraignment Hearing).   The Government stated that it was prepared to prove the following if the matter proceeded to trial:

> On or about July 18, 2012, continuing through on or about May 16, 2013, the defendant Lenyn Acosta knowingly and intentionally conspired and agreed with co-defendant Debora Baldizon and other indicted and unindicted conspirators, knowing and in reckless disregard of the fact that aliens had come to, entered and remained in the United States in violation of law, to knowingly conceal, harbor and shield from detection such aliens within the United States in any building, that is, a residence located in Houston, Texas.

> The Defendant Lenyn Acosta knew the unlawful purpose of the agreement and joined in it willfully—that is, with the intent to further its unlawful purpose.

> Defendant Lenyn Acosta furthered the unlawful purpose of the conspiracy by coordinating the housing of aliens once they reached the Houston area by arranging for aliens' transportation to points north of Houston, Texas, and by harboring groups of aliens at various stash houses or his own residences located within the Southern District of Texas is order to shield aliens from detection and to further their illegal presence in the United States.

> In July, 2012, family members of Betzabe Lopez-Ruiz contacted local law enforcement in Atlantic County, New Jersey, to report receiving a distress call from Ms. Ruiz, who was reportedly being held against her will at a location in Houston, Texas.  Ms. Ruiz is a citizen and national of Mexico who had no legal status to be in the United States.  She was released and transported to New Jersey where she was interviewed by federal agents.  Ms. Ruiz reported to agents that she was smuggled into the United States to Houston, Texas, and, once there, harbored by the Defendant Lenyn Acosta and his wife Debora Baldizon at, among other locations, their residence for approximately two days beginning on July 18, 2012.  Ms. Ruiz was able to identify the residence from a photograph as Apartment 240 located at 7502 Corporate Drive, Houston, Texas.

> Agents in Houston then began to investigate Defendant Lenyn Acosta and his

wife, Debora Baldizon.  Throughout their investigation it was determined that Lenyn Acosta and his wife, Debora Baldizon, were involved in coordinating and harboring of aliens in the Houston, Texas, area and the transportation of aliens from Houston to other locations within the United States.

On May 16, 2013, agents executed a search warrant at 10227 Spice Lane, Apartment Apartment 1207, Houston, Texas, which was then the residence of Defendants Lenyn Acosta and Debora Baldizon.

Inside the residence agents discovered 13 aliens, to include Ingrid Rivera-Garcia, Pedro Solis-Jirom and Reyna Vales Godenez-Lopez, all of whom were determined to be non-citizens of the United States unlawfully present in the United States.

Defendant Lenyn Acosta knew and recklessly disregarded the fact that the previously mentioned aliens were aliens–that is, non-citizens of the United States—who had come to, entered and remained in the United States in violation of law.

\*              \*                    \*

The Court: Okay.  Let me ask you, Mr. Acosta.  Can you tell me in your own words what it is you did to commit the crime you're pleading "guilty" to this morning?
Defendant Acosta: Well, Your Honor, first of all, good afternoon.

Yes, it is true that I helped people.  I had them in my house because of my economic or financial circumstances, because I have a big family.  I have eight children.  My mother is ill.  So is my father.  My mother's injections cost $50 a week.

So, it came to the point that my work—well, I only work three days a week.  And I tried to help these people so that I could earn enough money to help my children in Nicaragua and here in the United States and, also, to pay my mother's injections.

(Mr. Weisfeld and the Defendant confer).

Defendant Acosta: Yes.  I had the people in my house.

The Court: And you heard what Ms. MacDonald said that she believed that she could prove if we went to trial.  Do you have any serious disagreement with any of the things that Ms. MacDonald has told us she thinks she could prove?

Defendant Acosta: No, Your Honor.

(Document No. 156, p. 31-34).

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared (Document No. 108, 129), to which Acosta filed written objections. (Document No. 124).[2]  Pursuant to the U.S. Sentencing Guidelines in effect when Acosta was sentenced, he had a base offense level of 12 under U.S.S.G. § 2L1.2(a)(3).  Because the instant offense involved the harboring of 161 aliens, his offense level was increased by 9 levels under U.S.S.G. § 2L1.1(b)(2)(C).[3] Because the offense involved the smuggling, transporting or harboring of two minors, Acosta's offense level was increased by 2 levels pursuant to U.S.S.G. § 2L1.1(b)(4).  Because Acosta sexually assaulted Betzabe Ruiz, his offense level was increased by 4 levels pursuant to U.S.S.G. § 2L1.1(b)(7)(B).  Because Acosta was an organizer/leader of criminal activity that involved five or more participants or was otherwise extensive, his offense level was increased by 4 levels pursuant to U.S.S.G. § 3B1.1(a).  Because Acosta accepted responsibility for his role in the offense, and did so timely, his offense level was reduced by 3 levels pursuant to U.S.S.G. § 3E1.1(a) and (b).  With a total offense level of 28, and a criminal history of category of I, Acosta had a guideline sentencing range of 78 to 97 months.

---

[2]  Acosta objected to paragraphs 65-67 of the PSR.  Specifically, the information relating to Ada Ruth Turcious, a cooperating conspirator, who identified Acosta and his wife as persons she had worked with to move undocumented aliens within the United States.  Acosta also objection to Paragraph 80.  Acosta denied sexually assaulting Ms. Ruiz.  Finally, Acosta objected to Paragraph 82, and his role in the offense.  According to Acosta, he was a manager, not an organizer/leader.

[3]  According to the relevant conduct assessment, the number of aliens was "based on the 98 aliens documented in the ledgers and aliens accounted for during the time between August 15, 2012 through May 16, 2013 (98 aliens-ledgers in the vehicle); 11 aliens on August 15, 2012 (the driver stated he departed with a total of 11 aliens); 8 aliens which Jose Torres admitted to have transported for Acosta and Baldizon the week prior to his arrest; 10 aliens on January 2, 2013; 9 aliens on March 26, 2013, one of whom was a juvenile; 9 aliens on May 14, 2013; 13 aliens inside the house the day of Acosta and Baldizon's arrest (May 16, 2013), one of which was a juvenile; 2 aliens with Acosta the day of his arrest; and one alien with Baldizon in her vehicle on May 16, 2013).  (Document No. 108, ¶ 72).

Acosta was sentenced on June 6, 2014.  The transcript of Acosta's Sentencing, shows that Acosta stated he had no other objections to the PSR than those raised by counsel.  (Document No. 165, Transcript of Sentencing, p. 4). Acosta was sentenced to 97 months.  In imposing Acosta's sentence, the Court stated, in pertinent part:

> Lenyn Acosta is before the Court after having pled guilty to conspiracy to transport, harbor and shield from detection illegal aliens within the United States. Mr. Acosta is viewed as an organizer leader in his criminal activity that involved five or more participants.
>
> He hired Franklin Gutieres who then recruited Hernandez-Chinchilla. Furthermore, the drivers in the traffic stops listed in the PSR all stated Acosta hired them to transport the undocumented aliens.
>
> Additionally, Mr. Acosta admitted to hiring his friends to drive the undocumented aliens.  He was in charge of the stash house, made phone calls to arrange payments, kept ledgers and collected money.  He's been held accountable for a total of 161 aliens, two of which were minors.  Both minors were 15 years old unaccompanied by a parent or guardian.
>
> This number is based on the 98 aliens documented on the ledgers and aliens accounted for during the time between August 15th, 2012 through May 16th, 2013; 98 aliens' ledgers in the vehicle; 11 aliens on August 15th, 2012.  Drivers stated he departed with a total of 11 aliens, 8 aliens which Jose Torres admitted to having transported for Acosta and Baldizon the week prior to his arrest.
>
> 10 aliens on January 2nd, 2013; 9 aliens on March 26th, 2013, one of whom was a juvenile; 9 aliens on May 14th, 2013; 13 aliens inside the house the day of Acosta and Baldizon's arrest on May 16, 2013, one of which was a juvenile; two aliens with Mr. Acosta the day of his arrest, and one alien with Ms. Baldizon in her vehicle on May 16th, 2013.
>
> Furthermore, Mr. Acosta is being held accountable for causing serious bodily injury to Betsabe Ruiz, who reported she was sexually abused by Acosta while she was harbored in Houston, Texas.
>
> Therefore, I believe that a sentence at the high end of the guideline range is sufficient and necessary but not greater than necessary to comply with the purposes of the statutory framework of the provisions of 18, United States Code, Section 3553(a).

6

(Document No. 165, Transcript of Sentencing, pp. 24-26).Judgment was entered on June 13, 2014. (Document No. 146).   To correct a clerical error, and Amended Judgment was June 23, 2014). (Document No. 148).   Acosta appealed his conviction or sentence. On October 22, 2015, the Fifth Circuit United States Court of Appeals dismissed Acosta's appeal as frivolous.   (Document No. 168, 169).   Acosta did not file a petition for writ of certiorari in the United States Supreme Court.   Acosta filed the instant § 2255 motion of June 8, 2018.   (Document No. 174, 175).

## II. Discussion

A. Acosta's § 2255 Motion is time-barred

The Government argues that Acosta's § 2255 Motion is subject to dismissal because none of the alternate dates for commencement of the limitations period apply and he has not shown that the limitations period should be equitably tolled. The Magistrate Judge agrees.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted.   AEDPA provides a one-year limitations period for filing § 2255 motions.   *See* 28 U.S.C. § 2255(f).   Pursuant to § 2255(f), the one-year limitation period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The one-year limitations period is subject to equitable tolling "only 'in rare and exceptional circumstances.'"  *United States v. Riggs,* 314 F.3d 796, 800 n. 9 (5th Cir. 2002)(citing *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)).  The party seeking equitable tolling bears the burden of demonstrating that equitable tolling is appropriate. *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008). The AEDPA statute of limitations can also be overcome by a showing of "actual innocence."  *See McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013).  This requires a movant to present "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  *Id.* at 1936 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

Because Acosta filed the instant § 2255 motion after the effective date of AEDPA, the provisions of the statute apply. Here, for purposes of § 2255(f)(1), Acosta's conviction became final on January 19, 2016, when the time for filing a petition for a writ of certiorari expired. *Clay v. United States*, 537 U.S. 522, 527 (2003);  *See* U.S. Sup. Ct. R. 13(1)(providing for 90 day period for filing a petition for certiorari after entry of the court of appeal's judgment).  Here, the Fifth Circuit affirmed his conviction and sentence on October 22, 2015.  Acosta had until January 19, 2016, to file a petition for writ of certiorari.  His one year statute of limitations for filing a timely § 2255 motion expired on January 19, 2017. *See* § 2255(f)(1).  Acosta filed his § 2255 Motion on or about June 8, 2018, nearly seventeen months after the limitations period expired.  Under these circumstances, Acosta's § 2255 motion is untimely under § 2255(f)(1), and is subject to dismissal absent a showing that an alternate date for commencement of the limitations period should be applied under § 2255(f)(2)-(4) or that the limitations period should be equitably tolled.

8

As for the alternative commencement dates for the one year limitation period provided for in § 2255(f)(2), (3), and (4), none applies. Acosta does not allege that government action prevented him from filing a § 2255 motion earlier under § 2255(f)(2), he does not allege a claim based on a right initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review under § 2255(f)(3); nor does he allege that the facts supporting his claim arose when he was sentenced, so § 2255(f)(4) does not apply. Furthermore, upon this record Acosta has not shown that the limitations period should be equitably tolled.

The law is clear that only rare and exceptional circumstances may warrant the application of equitable tolling principles to an untimely filed § 2255 Motion to Vacate, Set Aside or Correct Sentence. *United States v. Petty*, 530 F.3d 361, 364-65 (5th Cir. 2008); *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000). Equitable tolling, however, is not available if the Movant does not act diligently in attempting to meet the one year limitations deadline. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000). Additionally, the Fifth Circuit has approved the application of equitable tolling in very limited circumstances, "'principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his right.'" *Fierro* v. *Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002)(quoting *Coleman*, 184 F.3d at 402.) The Fifth had disapproved of the application of equitable tolling for circumstances which are "garden variety claims of excusable neglect." *Lockingbill v. Cockrell*, 239 F.3d 256, 265 (5th Cir. 2002). The Movant must show "'that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented a timely filing.'" *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010)(quoting *Pace v. DiGugielmo*, 544

9

U.S. 408, 418); *see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007). Acosta argues that he would have timely filed his § 2255 motion had his appellate counsel told him about the one-year filing deadline. (Document No. 174, p. 9). Acosta's argument for equitable tolling is unavailing. "The Sixth Amendment does not require counsel to apprise a defendant of the availability of collateral proceedings for attacking a conviction or any limitations on the seeking of such relief." *United States v. Morfin*, No. 3-06-CV-2310M, 3-03-CR-434M, 2007 WL 837276 at *3 (N.D. Tex. Mar. 20, 2007)(movant not entitled to equitable tolling based on counsel's failure to inform movant about the one-year statute of limitations for § 2255 motions); *see also United States v. Petty*, 530 F.3d 361, 366 (5th Cir. 2008)("ineffective assistance of counsel is irrelevant to the [equitable] tolling decision because a prisoner has no right to counsel during post-conviction proceedings[:] . . . [m]ere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified"). Acosta has filed his § 2255 Motion seventeen  months too late. Given the absence of any facts in the record which would constitute rare and exceptional circumstances, equitable tolling of the limitations period is not applicable.

Because Acosta's §2255 Motion was not timely filed and because there are no grounds available to toll the limitations period, his § 2255 Motion should be denied as time-barred.

B.  Acosta's Waiver of Right to Collaterally Challenge Conviction and/or Sentence

Even assuming that Acosta's § 2255 Motion had been timely filed, it should be dismissed because he waived his right to collaterally challenge his conviction and/or sentence.

A defendant's wavier of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside, or correct sentence under 28 U.S.C., § 2255, like a waiver by a defendant of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary. *United*

*States v. Barnes*, \_\_\_F.3d\_\_\_, 2020 WL 1332927 (5th Cir. Mar. 23, 2020); United *States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)(enforcing defendant's voluntary and knowing waiver of a § 2255 motion).  In this case, as discussed above, Acosta, as part of his written Plea Agreement, waived his right to appeal, and he also waived his right to collaterally challenge his conviction and/or sentence. In addition, at his Rearraignment Hearing, the Court engaged in an extended colloquy to ensure that Acosta was competent to participate in the Rearraignment proceedings, understood the offense to which he was pleading guilty, the maximum sentence he faced and the rights he was giving up by virtue of pleading guilty.  Given Washington's statement's on the record, which carry a strong presumption of verity, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), that he had read and discussed the written Plea Agreement with his counsel, that he understood the statutory and constitutional rights that he was waiving, that he understood the possible range of punishment and how his sentence would be determined, and that he understood that he waived his right to appeal and to file a post conviction proceeding, Acosta has not shown that his plea was not counseled, knowing, and voluntary, and upon this record, Acosta's waiver of his right to collaterally attack his conviction with a § 2255 Motion is valid and should be enforced.  It also serves as a bar to the instant § 2255 motion being considered by the Court.

## III.  Conclusion and Recommendation

Because none of the alternative commencement dates for the one year limitation period provided for in § 2255(f)(2), (3), and (4) applies, and Acosta has not shown that the limitations period should be equitably tolled, his § 2255 motion is time- barred under § 2255(f)(1).  It is

RECOMMENDED that the Government's Motion to Dismiss Movant's § 2255 Motion (Document No. 179 ) be GRANTED, and that Movant Lenyn Acosta's § 2255 Motion to Vacate,

Set Aside or Correct Sentence (Document No. 174, 175) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 4th  day of May, 2020.

Frances H. Stacy
United States Magistrate Judge

13